UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JOHN HOOD,

                Plaintiff,

      V.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

**REPORT AND RECOMMENDATION**

09-CV-607
(MAD/VEB)

---

## I. INTRODUCTION

In August and September of 2006, Plaintiff John Hood filed applications for Supplemental Security Income ("SSI") benefits and disability insurance benefits ("DIB") under the Social Security Act. Plaintiff alleges that he had been unable to work since August of 2006 due to a respiratory impairment. The Commissioner of Social Security denied Plaintiff's applications.

Plaintiff commenced this action by and through his attorney, Peter M. Margolius, Esq., seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 14).

## II. BACKGROUND

The relevant procedural history may be summarized as follows: Plaintiff applied for DIB on August 24, 2006, and for SSI benefits on September 7, 2006, alleging disability beginning on August 18, 2006. (T at 15, 43-44).[1] The applications were denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held in Albany, New York on February 12, 2008, before ALJ Carl Stephan. (T at 23). Plaintiff, represented by counsel, appeared and testified. (T at 25-38). Plaintiff's wife also appeared and testified. (T at 39-41). On February 26, 2008, ALJ Stephan issued a written decision denying Plaintiff's applications for benefits. (T at 15-22). The ALJ's decision became the Commissioner's final decision on March 27, 2009, when the Appeals Council denied Plaintiff's request for review. (T at 1-6).

Plaintiff, by and through his attorney, timely commenced this action on May 26, 2009. (Docket No. 1). The Commissioner interposed an Answer on October 28, 2009. (Docket No. 9). Plaintiff filed a Brief in support of his action on December 28, 2009. (Docket No. 12). Defendant filed a Brief in opposition on January 11, 2010. (Docket No. 13).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons that follow, it is respectfully recommended that the Commissioner's

---

[1] Citations to "T" refer to the Administrative Transcript. (Docket No. 10).

[2] General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

motion be denied, Plaintiff's motion be granted, and that this case be remanded for further administrative proceedings.

### III. DISCUSSION

**A.     Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained

"even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.   Analysis**

    **1.   Commissioner's Decision**

The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2010.  The ALJ found that Plaintiff had not engaged in substantial gainful activity since August 18, 2006, the alleged onset date.  The ALJ concluded that Plaintiff had a respiratory impairment, which the ALJ considered a severe impairment, as defined under the Act. (T at 17).  However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments set forth in the Listings. (T at 18).

The ALJ concluded that Plaintiff retained the residual functional capacity to perform light work, as defined in 20 CFR §§ 404.1567 (b) and 416.967 (b), except that Plaintiff needed to avoid highly concentrated irritants such as dust, concentrated chemical fumes,

---

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

and extremes of temperature or humidity. (T at 19).  Plaintiff was found to be unable to perform his past relevant work as a heavy equipment operator. (T at 21).

Considering Plaintiff's age (42 years old on the alleged onset date), education (limited), work experience, and residual functional capacity, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 21).  As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Act, from August 18, 2006 (the alleged onset date) through February 26, 2008 (the date of the ALJ's decision). (T at 22).  As noted above, the ALJ's decision became the Commissioner's final decision on March 27, 2009, when the Appeals Council denied Plaintiff's request for review.  (T at 1-6).

    **2.**    **Plaintiff's Claims**

Plaintiff argues that the Commissioner's decision should be reversed.  Plaintiff offers three (3) principal arguments in support of this position.  First, Plaintiff contends that the ALJ did not properly assess his residual functional capacity.  Second, Plaintiff argues that the ALJ's credibility determination was flawed.  Third, Plaintiff asserts that the Appeals Council improperly discounted new medical evidence submitted after the date of the ALJ's decision.  This Court will address each argument in turn.

    **a.**    **RFC**

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999).  "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must

include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a). An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F.Supp. 180, 183 (N.D.N.Y.1990).

As noted above, the ALJ concluded that Plaintiff retained the residual functional capacity to perform light work, as defined in 20 CFR §§ 404.1567 (b) and 416.967 (b), except that Plaintiff needed to avoid highly concentrated irritants such as dust, concentrated chemical fumes, and extremes of temperature or humidity. (T at 19).

In particular, the ALJ found that Plaintiff had "moderate restricted airway disease related to asthma." (T at 18). This finding was based upon a pulmonary function study performed on October18, 2006, which indicated a forced vital capacity ("FVC") of 3.44 L (63% of the predicted value) and one-second forced expiratory volume ("FEV") of 2.61 L (59% of the predicted value). (T at 150). By way of comparison, to satisfy the impairment set forth in § 3.02 of the Listings, a person of Plaintiff's height (72 inches), would need an FEV of 1.65 L or less (chronic obstructive pulmonary disease) or an FVC of 1.85L (chronic restrictive ventilatory disease).

Plaintiff was not able to complete the pulmonary function study due to coughing. In particular, the person who administered the test stated that Plaintiff "cooperated to the best of [his] ability," but was "coughing each trial," took "long breaks in between trials," and

7

"could not blow long enough without coughing." (T at 150). Plaintiff contends that his inability to complete the testing was evidence that his respiratory impairment was more severe than the ALJ assessed.

This Court finds the ALJ's assessment of Plaintiff's RFC is supported by substantial evidence. "Conflicts in evidence . . . are for the Commissioner to resolve. White v. Comm'r of Social Security, No. 06-CV-0564, 2008 WL 3884355, at *11 (N.D.N.Y. Aug. 18, 2008) (citing Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir.1983)). Where, as here, there are conflicts in the medical evidence, it is the ALJ's decision that controls as factfinder. Id. If the Commissioner's decision "rests on adequate findings supported by evidence having rational probative force, [the Court] will not substitute [its] judgment for that of the Commissioner." Id. (citing Veino v. Barnhart, 312 F.3d at 586).

The ALJ addressed Plaintiff's inability to complete the pulmonary function study by interpreting the "results of the testing in a light most favorable" to Plaintiff and accepting the test as indicating that Plaintiff "has moderate restricted airway disease related to asthma." (T at 18). In addition, the medical evidence indicated that Plaintiff received medical treatment for shortness of breath only four times over a two-year span. (T at 157, 159, 161, 174). Plaintiff's oxygen saturation was generally noted to be normal, with good air flow, and regular respirations. (T at 157, 159, 161).

Dr. Kautilya Puri, a consultative examiner, described Plaintiff's pulmonary function testing as "not acceptable or reproducible," but consistent with "moderate obstruction on examination." (T at 148). He concluded that Plaintiff had no objective limitations with communications, fine motor, or gross motor activities. (T at 149). He found "mild limitations" as to Plaintiff's activities of daily living and recommended that Plaintiff "not carry

out any strenuous activity or be in an environment which would increase his respiratory complaints." (T at 149). The consultative examiner's findings were supportive of the ALJ's RFC assessment.

Further support for the ALJ's assessment is found in the report of the non-examining State Agency review consultant, who concluded that Plaintiff had no residual functional capacity reduction except to avoid concentrated dust and fumes. (T at 163). The consultant also found that Plaintiff could occasionally lift/carry 50 pounds, frequently lift/carry 25 pounds, stand/walk/sit for about 6 hours in an 8-hour workday, and push/pull in unlimited amounts. (T at 166).

It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

Such reliance is particularly appropriate where, as here, the opinions of these examining and non-examining State agency medical consultants are supported by the weight of the evidence. See Brunson v. Barnhart, 01-CV-1829, 2002 WL 393078, at *14 (E.D.N.Y. Mar. 14, 2002) (holding that opinions of non-examining sources may be considered where they are supported by evidence in the record).

Problematic, however, is that the ALJ came to his conclusion without the report of

9

Plaintiff's treating physician, Dr. Enzien, because the report was generated several months after the ALJ's decision. As will be discussed below, because the Appeals Council discounted this later report, the ALJ's RFC is necessarily flawed. As it stands to this point, before the new evidence was improperly handled by the Appeals Council, the ALJ committed no reversible error on his RFC finding with the evidence he possessed at the time of Plaintiff's hearing.

### b. Credibility

Subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contentions, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....
>
> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to

>determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

>1. [Plaintiff's] daily activities;
>2. The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
>3. Precipitating and aggravating factors;
>4. The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
>5. Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
>6. Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
>7. Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F. Supp 604, 608 (S.D.N.Y.1987)).

In the present case, Plaintiff testified to significant respiratory difficulties, including shortness of breath, coughing fits, and problems sleeping. (T at 30-32, 34). The ALJ found that Plaintiff's medically determinable impairment could reasonably be expected to produce the alleged symptoms, but that his statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible to the extent alleged. (T at 19-20). In

particular, the ALJ noted the lack of medical treatment (including Plaintiff's discontinuance of prescribed medication) and the fact that Plaintiff reported smoking between 1/2 to 3/4 of a pack of cigarettes daily. (T at 20).

SSR 96-7p provides that a claimant's "statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed." Under that ruling, however, an ALJ must not draw an adverse inference from a claimant's failure to seek or pursue treatment "without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." Id.

During his hearing testimony, Plaintiff stated that he did not "really believe in" doctors, explaining that doctors had "killed [his] mother" and "helped kill [his] father." (T at 31). The ALJ did not explicitly discuss this explanation when evaluating Plaintiff's credibility, as required under SSR 96-7p. However, the ALJ's error in this regard was harmless. See Duvergel v. Apfel, No. 99 Civ. 4614, 2000 WL 328593, at *11 (S.D.N.Y. Mar.29, 2002); see also Curry v. Sullivan, 925 F.2d 1127, 1129 (9th Cir.1996) (harmless error rule applies to review of denial of disability benefits).

As set forth above, the medical evidence (including the opinions of the consultative examiner and State Agency review consultant) were inconsistent with Plaintiff's claims of disabling respiratory difficulties. Also, the ALJ could have rejected Plaintiff's stated excuse for not seeking treatment (distrust of the medical profession) as itself not credible, particularly given the fact that Plaintiff did seek medical treatment, albeit occasionally. General distrust of the medical profession is not listed among the "good reasons" for failing

to follow prescribed treatment under SSR 96-7.

"It is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Carroll v. Secretary of Health and Human Servs., 705 F.2d 638, 642 (2d Cir.1983) (citations omitted). If there is substantial evidence in the record to support the Commissioner's findings, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." Aponte v. Sec'y, Dep't of Health & Human Servs, 728 F.2d 588, 591 (2d Cir.1984) (citations omitted). Further, the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, which thus entitles the ALJ's credibility assessment to deference. See Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir.1999) (citing Pascariello v. Heckler, 621 F.Supp. 1032, 1036 (S.D.N.Y.1985)); see also Snell v. Apfel, 177 F.3d 128, 135 (2d Cir.1999).

Accordingly, this Court finds no reversible error with respect to the ALJ's credibility determination. However, the assessment of Plaintiff's credibility will necessarily need to be revisited on remand in light of Dr. Enzien's opinion, as discussed below.

### c.     Appeals Council

The Appeals Council shall consider "new and material" evidence if it "relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. § 404.970(b); see also § 416.1470(b); Perez v. Chater, 77 F.3d 41, 45 (2d Cir.1996). The Appeals Council "will then review the case if it finds that the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b); see § 416.1470(b). "

Even if "the Appeals Council denies review after considering new evidence, the

[Commissioner]'s final decision necessarily includes the Appeals Council's conclusion that the ALJ's findings remained correct despite the new evidence." Perez, 77 F.3d at 45. Accordingly, the additional evidence becomes part of the administrative record reviewed by the district court. Id. at 45-46. The role of the district court is to review whether the Appeals Council's action was in conformity with these regulations. See 42 U.S.C. § 405(g) (sentence five); see, e.g., Woodford v. Apfel, 93 F.Supp.2d 521, 528 (S.D.N.Y.2000) (concluding that the "Appeals Council erred when it determined that [the new] evidence was insufficient to trigger review of the ALJ's decision").

In this case, Plaintiff submitted new evidence to the Appeals Council in the form of progress notes and a medical source statement from his treating physician, Dr. Ernest Enzien.

Dr. Enzien first treated Plaintiff in June of 2008 (approximately four months after the ALJ's decision). (T at 180). Dr. Enzien diagnosed shortness of breath (dyspnea) on exertion. (T at 181). After further examination and testing, Dr. Enzien opined that Plaintiff's symptoms were consistent with chronic obstructive pulmonary disease ("COPD"). (T at 176).

In the medical source statement, dated September 29, 2008, Dr. Enzien opined that Plaintiff could occasionally lift up to 20 pounds, but could never carry more than 10 pounds. (T at 182). He indicated that Plaintiff could sit/stand/walk for about 1 hour in an 8-hour workday and could never climb stairs/ramps/ladders/or scaffolds. (T at 183, 185). Dr. Enzien stated that Plaintiff could not perform activities like shopping, walk a block at a reasonable pace on rough or even surfaces, use public transportation, or climb a few steps at a reasonable pace with the use of a single hand rail. (T at 187). This assessment from

a treating physician is significant because it contradicts the findings of the consultative examiner and State Agency review consultant, which were the primary pieces of evidence the ALJ cited in support of his decision.

The Appeals Council considered Dr. Enzien's assessment, but found that it did not provide a basis for changing the ALJ's decision. (T at 2). The Appeals Council explained its decision as follows:

> The Administrative Law Judge decided your case through February 26, 2008. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before February 26, 2008.

The Appeals Council's decision is contrary to Second Circuit case law expressly holding that "medical evidence generated after an ALJ's decision cannot be deemed irrelevant solely because of timing." Newbury v. Astrue, 321 Fed.Appx. 16, 2009 WL 780888, at *2 n.2 (2d Cir. Mar. 26, 2009)(citing Pollard v. Halter, 377 F.3d 183, 193 (2d Cir.2004)).

The categorical refusal to consider evidence solely because it was created after the date of the ALJ's decision is an error. Pollard, 377 F.3d at 193 ("Although the new evidence consists of documents generated after the ALJ rendered his decision, this does not necessarily mean that it had no bearing on the Commissioner's evaluation of [the Claimant's] claims. To the contrary, the evidence directly supports many of her earlier contentions regarding [the] condition. It strongly suggests that, during the relevant time period, [her] condition was far more serious than previously thought"); see also Sergenton v. Barnhart, 470 F. Supp.2d 194, 204 (E.D.N.Y. 2007).

Dr. Enzien's assessment does not suggest that Plaintiff's COPD and related medical

problems were newly emergent issues. Moreover, because his treating relationship began only a few months after the ALJ's decision, it is not unreasonable to believe Dr. Enzien might have been able to provide a retrospective assessment concerning the nature and extent of Plaintiff's limitations during the relevant time period. See Dousewicz v. Harris, 646 F.2d 771, 774 (2d Cir.1981) ("While Dr. Sanfacon did not treat the appellant during the relevant period . . ., his opinion is still entitled to significant weight."). Again, Dr. Enzien's assessment was significant because he was a treating medical source and his opinion called into question the findings of the consultative examiner and State Agency review consultant. Also, the assessment was consistent with Plaintiff's testimony concerning the nature and extent of his limitations. The Appeals Council erred by rejecting the evidence *per se* on the ground that it was issued very shortly after the ALJ's decision. Accordingly, this Court finds that a remand is necessary for reconsideration of the records submitted to the Appeals Council.

### 3. Remand

"Sentence four of Section 405 (g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'" Butts v. Barnhart, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405 (g)). Remand is "appropriate where, due to inconsistencies in the medical evidence and/or significant gaps in the record, further findings would . . . plainly help to assure the proper disposition of [a] claim." Kirkland v. Astrue, No. 06 CV 4861, 2008 WL 267429, at *8 (E.D.N.Y. Jan. 29, 2008). Given the deficiencies in the record as outlined above, it is recommended that the case be remanded for further proceedings consistent with this Report and Recommendation.

## IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Plaintiff's motion for judgment on the pleadings be granted, Defendant's motion for judgment on the pleadings be denied, the decision of the Commissioner be reversed, that the case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405 (g) for further administrative proceedings consistent with this Report and Recommendation.

Respectfully submitted,

Dated:   March 9, 2012

Syracuse, New York

Victor E. Bianchini
United States Magistrate Judge

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report &**

**Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

March 9, 2012

Victor E. Bianchini
United States Magistrate Judge